**Certiorari Denied, March 15, 2016, No. S-1-SC-35765**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-033**

**Filing Date: January 20, 2016**

**Docket No. 31,678**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellant,**

**v.**

**ARMANDO PEREZ,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**H.R. Quintero, District Judge**

Hector H. Balderas, Attorney General
Margaret E. McLean, Assistant Attorney General
M. Anne Kelly, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appelle

**OPINION**

**Vigil, Chief Judge.**

**{1}**    The State appeals the district court's order excluding the testimony of an eight-year-old girl (C.S.) in a case alleging multiple counts of sexual abuse against her by Defendant-Appellee Armando Perez (Defendant) on the basis that C.S. was incompetent to testify as

1

a witness. This case presents two issues: first, whether the district court's ruling that C.S. was incompetent to testify was an abuse of discretion, and second, whether the case should be reassigned to a different district court judge upon remand. We conclude that the district court's determination that C.S. was incompetent to testify was in error, but reassignment on remand is not required.

## I.  BACKGROUND

**{2}**     This case originated in December 2010, when C.S. disclosed to, Fatima P. (Mother), that Defendant had been molesting her. Mother took C.S. to the hospital, where she was seen by a nurse; C.S. again disclosed the sexual abuse to the nurse. Defendant was eventually charged with ten counts of criminal sexual penetration in the first degree, *see* NMSA 1978, § 30-9-11(A), (D)(1) (2009), and five counts of criminal sexual contact of a minor in the second degree. *See* NMSA 1978, § 30-9-13(A), (B) (2003).

**{3}**     In July 2011, Mother gave a handwritten note to a defense investigator in what appeared to be a child's writing. The note, which contained C.S.'s first name at the bottom, stated: "Armando didn't do anything it was all [illegible] that did it, the voices told me to blame it on Armando. My mom will read this I have pictures look through all of them. [C.S.]" As a result of this note, just two days before the jury trial was scheduled to commence, the district court *sua sponte* issued an emergency order setting a pre-trial conference to determine the competency of C.S. to testify as a witness, expressing concern about the voices referenced in the note. Neither party had raised the issue of competency.

**{4}**     At the hearing, the prosecutor maintained that competency was not an issue, while defense counsel stated that a psychological evaluation was appropriate pursuant to NMSA 1978, Section 30-9-18 (1987).[1] The district court ordered a psychological evaluation of C.S. to determine her competency to testify at the jury trial, as well as her competency at the

---

[1]Section 30-9-18 states in full:

In any prosecution for criminal sexual penetration or criminal sexual contact of a minor, if the alleged victim is under thirteen years of age, the court may hold an evidentiary hearing to determine whether to order a psychological evaluation of the alleged victim on the issue of competency as a witness. If the court determines that the issue of competency is in sufficient doubt that the court requires expert assistance, then the court may order a psychological evaluation of the alleged victim, provided however, that if a psychological evaluation is ordered it shall be conducted by only one psychologist or psychiatrist selected by the court who may be utilized by either or both parties; further provided that if the alleged victim has been evaluated on the issue of competency during the course of investigation by a psychologist or psychiatrist selected in whole or in part by law enforcement officials, the psychological evaluation, if any, shall be conducted by a psychologist or psychiatrist selected by the court upon the recommendation of the defense.

preliminary hearing that had already occurred, and appointed Dr. David Sachs to complete an evaluation and report.

**{5}**     Dr. Sachs testified at the competency hearing. With respect to the issue of whether C.S. was hearing voices that were making her do things, Dr. Sachs opined in the negative, stating that he "didn't have the impression that she was responding to command hallucinations[.]" The following exchange then took place during the prosecutor's questioning of Dr. Sachs:

> [Prosecutor]: . . . [Y]our report shows a capacity to differentiate between the truth and a lie?
>
> [Dr. Sachs]: Yes.
>
> [Prosecutor]: And she knows there are consequences for not telling the truth?
>
> [Dr. Sachs]: Yes.
>
> [Prosecutor]: She is generally aware of the truth and the difference between the truth and a lie?
>
> [Dr. Sachs]: Yes.
>
> [Prosecutor]: She understands the oath and promise?
>
> [Dr. Sachs]: Yes.
>
> [Prosecutor]: She has adequate intelligence and memory?
>
> [Dr. Sachs]: Potentially, yes. I stated that I do not think her memory was adequate or like anything I encountered in the course of doing prior assessments of abused or allegedly abused children, but, overall, I think her memory was adequate.
>
> [Prosecutor]: She has the ability to observe?
>
> [Dr. Sachs]: Yes.
>
> [Prosecutor]: To recall and communicate?
>
> [Dr. Sachs]: Yes.
>
> [Prosecutor]: And you have questions about her thought process?

[Dr. Sachs]: Very much so.

**{6}** Dr. Sachs nevertheless opined that C.S. was incompetent to testify as a witness, primarily basing his conclusion on the following concerns: her vagueness and lack of specificity in describing the abuse, vapid speech, inconsistencies in her description of the abuse, inability to maintain focus, the confusion that she showed, poor decision making and judgment as indicated by her performance on the Rorschach test, "signs of a thinking disorder" or "a quality of a schizophrenia spectrum disorder," and the absence of anxiety or post-traumatic stress disorder. Dr. Sachs stated: "I don't think she's malingering, I don't think she's fabricating, I just think everything is just very vague in her head."

**{7}** The district court found Dr. Sachs' testimony to be credible and ruled that C.S. was incompetent to testify at trial. Additionally, the district court ruled that the State could not use any of C.S.'s prior statements, neither the sworn testimony from the preliminary hearing, nor the recorded interview with the forensic examiner. At the hearing on the State's motion for reconsideration, the district court explained that Dr. Sachs' "identifi[cation of] a degree of perceptual disturbance related to a schizophrenic spectrum disorder and indications of developing Axis II issues . . . rendered [C.S.] not competent."

**{8}** When asked to make a retrospective opinion about C.S.'s competency to testify at the preliminary hearing, which took place nearly nine months earlier, Dr. Sachs explained that his report did not discuss this, and he did not evaluate C.S. at that time, but he would lean in [the] direction [that C.S.] probably was not competent at the time of her preliminary testimony, based on the vague nature of C.S.'s testimony at the hearing and his observations of her during his evaluation. Upon denial of the State's motion for reconsideration, or in the alternative, recusal, the State appealed the district court's exclusionary ruling.

**{9}** This appeal came before this Court previously, and our memorandum opinion addressed only the issue of whether the State's lack of certification language in its notice of appeal was a limitation on our exercise of appellate jurisdiction. *State v. Perez*, No. 31,678, mem. op. (N.M. Ct. App. Sept. 19, 2012) (non-precedential), *rev'd sub nom. State v. Vasquez*, 2014-NMSC-010, ¶¶ 32-33, 36, 326 P.3d 447. The Supreme Court reversed, holding that the State's efforts satisfied the statutory purpose of the certification requirement, and we now address the merits of the State's appeal. *Id.* ¶¶ 32-33, 36.

## II.    DISCUSSION

### A.    The District Court's Ruling That C.S. Was Incompetent to Testify as a Witness Was an Abuse of Discretion

**{10}** We turn first to the State's argument that the district court erred by applying the wrong legal standard in finding C.S. incompetent to testify both at trial and at the preliminary hearing. The State makes the following general contentions: first, that Dr. Sachs' testimony established that C.S. was competent to testify, and the district court abused its

discretion in concluding otherwise by applying the wrong legal standard and considering matters outside of the scope of evidence; and second, the district court erred by making a retroactive determination that C.S. was incompetent to testify at the preliminary hearing. In response, Defendant suggests that the district court applied the correct legal standard, sufficient evidence was presented to support the district court's exclusionary ruling, and matters outside of the record, although discussed by the district court, did not factor into the district court's ruling. We conclude that the district court applied an incorrect legal standard in finding C.S. incompetent to testify. Accordingly, we reverse.

## 1.      Standard of Review

**{11}**     We review the district court's determination regarding the competency of a witness to testify for an abuse of discretion. *See State v. Hueglin*, 2000-NMCA-106, ¶ 23, 130 N.M. 54, 16 P.3d 1113. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). "An abuse of discretion may also occur when the district court exercises its discretion based on a misunderstanding of the law." *State v. Favela*, 2013-NMCA-102, ¶ 16, 311 P.3d 1213 (internal quotation marks and citation omitted). We review de novo the propriety of the legal standard applied by the district court in determining whether C.S. was competent to testify as a witness. *See State v. Ruiz*, 2007-NMCA-014, ¶ 20, 141 N.M. 53, 150 P.3d 1003.

## 2.      C.S.'s Competency to Testify as a Witness

**{12}**     Our case law has established "a general presumption that all persons are competent to appear as witnesses." *Id.* ¶ 23. This principle stems from Rule 11-601 NMRA, which states that "[e]very person is competent to be a witness unless these rules provide otherwise." *See Hueglin*, 2000-NMCA-106, ¶ 22. Our Rules of Evidence state only four general exceptions: first, a witness must have personal knowledge, *see* Rule 11-602 NMRA; second, a witness must be able to understand the oath to truthfully testify, *see* Rule 11-603 NMRA; third, a judge is incompetent to testify in a trial over which he or she is presiding, *see* Rule 11-605 NMRA; and fourth, a juror is incompetent to testify in a trial for which he or she is serving on the jury, with certain exceptions, *see* Rule 11-606 NMRA.

**{13}**     In *Hueglin*, this Court explained that federal evidentiary principles are persuasive in interpreting our rules regarding witness competency and that recent federal commentary has shifted toward "convert[ing] questions of competency into questions of credibility." 2000-NMCA-106, ¶ 22 (internal quotation marks and citation omitted); *see also Ruiz*, 2007-NMCA-014, ¶ 23 (explaining that "a core principle of modern civil and criminal procedure" is to give questions of credibility to the jury, and not to the judge). In light of this change, "a witness wholly without capacity is difficult to imagine [and t]he question is one particularly suited to the jury as one of weight and credibility." *Hueglin*, 2000-NMCA-106, ¶ 22 (alteration, internal quotation marks, and citation omitted). The commentary to Federal Rules of Evidence, Rule 601 notes that "[s]tandards of mental capacity have proved elusive

in actual application. . . . [F]ew witnesses are disqualified on that ground." 34 Geo. Wash. L. Rev. 53 (1965) (citing Henry Weihofen, *Testimonial Competence and Credibility*). Fed. R. Evid. 601.

**{14}**  We summarized the standard for a district court to determine competency under Rule 11-601as requiring a witness to possess "a basic understanding of the difference between telling the truth and lying, coupled with an awareness that lying is wrong and may result in some sort of punishment." *Hueglin*, 2000-NMCA-106, ¶ 24 (internal quotation marks and citation omitted). Thus, when the competency of a witness is at issue, the district court is required to determine only whether "he or she meets a minimum standard, such that a reasonable person could put any credence in their testimony." *Ruiz*, 2007-NMCA-014, ¶ 23 (internal quotation marks and citation omitted).

**{15}**  Upon examination of Dr. Sachs' report and his testimony at the competency hearing, as well as the transcript of the competency hearing and hearing on the motion for reconsideration, we conclude that the district court applied an incorrect legal standard in concluding that C.S. was incompetent to testify. At the hearing on the motion for reconsideration, the district court stated that the facts in *Hueglin* were not applicable to the instant case because *Hueglin* dealt with the competency of a victim to provide video testimony under NMSA 1978, Section 38-6-8 (1993). *Hueglin*, 2000-NMCA-106, ¶ 9. The district court also determined that *Hueglin* was inapposite because the expert in that case concluded that the victim was competent to testify. While we acknowledge the factual differences in posture between this case and *Hueglin*, we disagree with the district court that *Hueglin* does not apply and conclude that the legal principles articulated in *Hueglin* regarding witness competence apply to the present case. Although Dr. Sachs' testimony stated that he believed, based on his opinion as a psychologist, that C.S. was incompetent to testify, it was incumbent upon the district court to apply the legal standard set forth in *Hueglin* to Dr. Sachs' testimony.

**{16}**  Dr. Sachs testified that C.S. had the capacity to tell the difference between the truth and a lie and knew that there were consequences for lying, which meets the minimum standard for witness competence. *See Hueglin*, 2000-NMCA-106, ¶ 24. We acknowledge Defendant's argument that Dr. Sachs testified that although C.S. knew the difference between the truth and a lie, it appeared that C.S. had an altered perception of the difference between fantasy and reality. This, Defendant argues, presents a "different, but related" question from whether or not a witness can differentiate between the truth and a lie and is also relevant to the question of competency. Relevant to this, Dr. Sachs' report reveals that he asked C.S. a series of questions to determine her ability to differentiate the truth and a lie. For example, when Dr. Sachs asked C.S. whether the statement that he ate a gorilla for breakfast is the truth or a lie, C.S. responded by saying, "[t]hat would be hard to do because it's furry and big." Dr. Sachs noted that this response indicated that "[s]he did not register the concept that the statement was not happening and took my example as being literal." Dr. Sachs' report also indicated that C.S. stated that if she broke a vase but did not tell her mother, that would be a lie; however, Dr. Sachs stated that this example is a secret, not a lie,

6

and indicates that "there is some inconsistency in her ability to verbalize and differentiate between truth and lie."

{17}    Despite Dr. Sachs' concerns that C.S. was unable to articulate the more subtle distinctions between a lie and a secret and his concern that C.S.'s responses to his questions were too literal, these finer distinctions did not ultimately alter Dr. Sachs' conclusion that C.S. was capable of telling the truth at a basic level, which satisfies the standard for witness competence. *See id.* In *Hueglin*, this Court upheld the district court's ruling that a victim was competent to testify even though she had Down Syndrome, an IQ of 36, had a mental age of a child slightly younger than six years, and possessed a "concrete simple understanding of the difference between a truth and a lie." *Id.* ¶¶ 2, 23 (alteration and internal quotation marks omitted). When the expert who testified in *Hueglin* was asked about the victim's ability to tell the truth, he stated that "[f]or her truth is telling what she remembers as best as she can remember it and a lie would be something else than that" and that "if you said you'd tell the truth to her, the truth will be saying what she remembers, not in a very sophisticated way, but only in the sense that when you ask a six year old to tell the truth." *Id.* ¶ 23 (internal quotation marks omitted).

{18}    Dr. Sachs testified that C.S. was able to tell the difference between the truth and a lie, that she was not fabricating her statements, and that she understood that there are consequences for not telling the truth. Applying the holding and principles articulated in *Hueglin* to Dr. Sachs' testimony, any concerns about C.S.'s inability to clearly articulate the difference between the truth and a lie, her thought process, vagueness, and possible undefined schizophrenic spectrum disorder are not instructive of her capacity to tell the truth and understand the consequences for not doing so, at the most basic level. *See generally* 1 *McCormick on Evidence* § 62 (7th ed. 2013) ("[P]roof of mental deficiency ordinarily has the effect of reducing the weight to be given to testimony rather than keeping the witness off the stand.").

{19}    We now turn to the State's argument that the district court also erred by retroactively excluding C.S.'s testimony from the preliminary hearing. The State argues that the district court lacked authority to rule on the competency of a witness who testified before another judge, or in the alternative, that Dr. Sachs' testimony failed to establish that C.S. was incompetent to testify at the preliminary hearing. Dr. Sachs' conclusion, which the district court adopted, was premised on his presumption that, based on relevant scientific literature, there was nothing that indicated that the same thought disorder he believed C.S. was suffering from at the time of his examination did not exist nearly nine months prior at the time of the preliminary hearing. Importantly, Dr. Sachs did not testify that C.S.'s ability to tell the truth or her knowledge of the consequences for not telling the truth would not have been present at the time of the preliminary hearing. Applying the foregoing legal principles regarding competency, we conclude that the district court erred in excluding C.S.'s preliminary hearing testimony on the grounds that C.S. was incompetent.

**B.      On Remand, Assignment to a Different District Court Judge Is Not Warranted**

**{20}** We turn to the State's final argument that if this Court reverses for any reason, the case should be assigned to a different district court judge on remand. The State does not request this Court to determine whether the district court erred by refusing to recuse itself at the State's request below.

**{21}** The State contends that reassignment is appropriate because the district court judge's denial of the State's motion for reconsideration was based, at least in part, on knowledge stemming from an extrajudicial source. *See State v. Bonilla*, 2000-NMSC-037, ¶¶ 11, 15, 130 N.M. 1, 15 P.3d 491 (vacating a defendant's sentence and holding that a judge's comments about a defendant's decision to proceed to trial warranted a remand to a different judge to avoid any appearance of impropriety). Specifically, the State references the following comments made by the district court at the competency hearing when announcing its ruling:

> I have been in this community for... twenty-eight years, and I'm well aware that the very same forensic, in quotes, forensic examiner that conducted this forensic examination has been challenged before for leading children, and there has been at least one prior court case by a prior judge who found that the form of that examination was not consistent with standards for examining children who are alleged to have been sexually abused.

**{22}** The State argues that because no one had raised any issue regarding the forensic examiner, "[t]he only possible source of the judge's strong feelings must necessarily have arisen outside of the events which occurred at the hearing itself." Defendant's answer brief "does not contest the State's assertions regarding matters outside the record" and states that the district court made no "attempt to hide its opinion of that interviewer[.]" However, Defendant contends that "[t]he [district] court's consideration of the identity of the interviewer only went to its decision to order an evaluation, a decision that is not challenged."

**{23}** We do not believe that the district court judge's comments regarding the forensic examiner rise to the level of requiring reassignment on remand, and we have confidence that the district court will preside over future proceedings in this case with fairness. *See In Re Esperanza M.*, 1998-NMCA-039, ¶¶ 31-34, 124 N.M. 735, 955 P.2d 204 (expressing disapproval about a district court judge's comment regarding the parents' decision not to testify but asking their daughter to do so, but concluding that the comment did not necessitate appellate intervention). *But see Quintana v. Bravo*, 2013-NMSC-011, ¶ 31, 299 P.3d 414 (remanding for reassignment to a different judge where the original district court judge failed to sanction one of the parties for non-compliance with a deadline, but did not do the same when the other party failed to comply with a procedural rule).

## III.    CONCLUSION

**{24}** The order of the district court is reversed and the case is remanded.

{25}     **IT IS SO ORDERED.**

                        _____

                        **MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**LINDA M. VANZI, Judge**