# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 89

APRIL TERM, A.D. 2013

*July 18, 2013*

LONNIE C. McLAURY,

Appellant
(Defendant),

v.

S-12-0240

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Michael Davis, Judge*

*Representing Appellant:*

Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and Eric M. Alden, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; and Christyne Martens, Assistant Attorney General.

*Before KITE, C.J., and HILL, VOIGT, BURKE, JJ., and GOLDEN, J., Retired.*

**HILL, J.**, delivered the opinion of the Court. **BURKE, J.**, filed a specially concurring opinion, in which **VOIGT, J.**, joins.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1] A jury convicted Lonnie McLaury of sexual assault in the first degree in violation of Wyo. Stat. Ann. § 6-2-302(a)(iii). On appeal, McLaury contends that the district court abused its discretion when it allowed a sexual assault nurse examiner (SANE nurse) to testify, over his objection, as to the statements made by the victim during the physical examination of her. We affirm the district court.

## ISSUE

[¶2] McLaury presents one issue:

> Did the trial court abuse its discretion in allowing hearsay testimony?

## FACTS

[¶3] On September 27, 2010, the victim and her boyfriend went to visit a friend at his apartment. Lonnie McLaury was also there. While watching television, the victim and her boyfriend fell asleep. The victim was awakened by McLaury digitally penetrating her vagina. She realized the person was McLaury and immediately woke her boyfriend, who told McLaury to stop, grabbed his arm, and threatened to cut his fingers off. The victim and her boyfriend immediately left the apartment.

[¶4] After leaving, the victim and her boyfriend drove to the Cheyenne Police Department where they reported the incident. The police officer then asked the victim if she would like to go to the hospital, and she stated that she would. A police report was filed after the victim's report and after the examination at the hospital.

[¶5] Based on the police report, McLaury was charged with one count of first degree sexual assault under § 6-2-302(a)(iii). The case went to jury trial, where the SANE nurse testified for the prosecution. Prior to testifying, however, McLaury requested that the district court prohibit the SANE nurse from repeating the statements made to her by the victim during the exam. Defense counsel suggested that the statements were not proper as prior consistent statements and would only serve to bolster the victim's testimony. The State, on the other hand, suggested that such testimony should be allowed as a statement made for the purpose of medical treatment. The district court allowed the testimony, as long as the SANE nurse did not vouch for the victim.

[¶6] During the SANE nurse's testimony, she explained why the circumstances of the assault were necessary to the exam – to determine potential injury and possibly collect biological evidence. The SANE nurse then testified that the victim indicated she was sexually assaulted by digital penetration. On cross-examination, defense counsel asked

the SANE nurse to clarify the nature of the assault, and then on redirect, the SANE nurse refreshed her recollection with her exam report. The SANE nurse then testified that the victim told her assailant to stop.

[¶7]    A jury found McLaury guilty as charged, and on May 24, 2012, the district court imposed a sentence of five to seven years, suspended in favor of five years of probation (which was later revoked). This appeal followed.

## STANDARD OF REVIEW

[¶8]    "Our review of rulings by a trial court, admitting or excluding evidence, is premised upon deference to the trial court, and we do not reverse a case because of evidentiary rulings unless an abuse of discretion is demonstrated." *Oldman v. State,* 998 P.2d 957, 960 (Wyo. 2000).

## DISCUSSION

[¶9]    In his only issue, McLaury argues that the district court abused its discretion in allowing hearsay testimony from the SANE nurse who testified about her examination of the victim in this case, and repeated a portion of the victim's statements. Specifically, McLaury contends that the district court did not properly apply the exception and the foundational requirements found in W.R.E. 803(4), "Statements for Purposes of Medical Diagnosis." In response, the State contends that the victim's statements to the SANE nurse were properly admitted under Rule 803(4) and that the foundational requirements under the rule were satisfied.

[¶10]  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E 801(c). Hearsay is inadmissible unless it falls into one of the exceptions recognized by the rules of evidence, and the exception at issue in this case is found in Rule 803(4), which reads as follows:

> **Rule 803. Hearsay exceptions; availability of declarant Immaterial.**
>
> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (4) *Statements for purposes of medical diagnosis or Treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or

2

general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

It has been said by this Court that the reason for this exception is the likelihood that the declarant was motivated to tell the truth by the belief that the effectiveness of the treatment depended upon the accuracy of the information relayed. *Oldman*, 998 P.2d at 961. A New Mexico Supreme Court case expounded on the line of thinking behind the exception:

> Two underlying rationales traditionally animate [the exception]. First, the "help-seeking motivation" counsels that the declarant's self-interest in obtaining proper medical attention renders "the usual risks of hearsay testimony … minimal when associated with medical treatment." *In re Esperanza M.,* 1998-NMCA-039, ¶ 9, 124 N.M. 735, 955 P.2 204 (1998). Indeed, statements made at the time of treatment may be *more* reliable than live testimony from the declarant offered at trial months or even years later. *See White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed. 2d 848 (1992) ("[A] statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think replicated by courtroom testimony.").
>
> The second rationale behind [the exception], commonly referred to as "pertinence," is that if a statement is pertinent to a medical condition, such that a medical care provider reasonably relies upon it in arriving at a diagnosis or treatment, the statement is deemed sufficiently reliable to overcome hearsay concerns. *Morgan v. Foretich*, 846 F.2d 941, 951 (4th Cir. 1988) (Powell, J., concurring in part and dissenting in part [footnote omitted]) ("[A] fact reliable enough to serve as a basis for a physician's diagnosis or treatment generally is considered sufficiently reliable to escape hearsay proscription."). At common law, these two rationales were considered separate, independent requirements, each of which had to be satisfied to admit statements under the Rule. *See id.; United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir. 1980).

*State v. Mendez*, 148 N.M. 761, ¶¶ 20-21, 242 P.3d 328, 334 (N.M. 2010).

[¶11] To ensure that the reason for the rule is satisfied, the existence of the proper foundation should be a primary consideration for the trial court when making its evidentiary ruling on such statements. *Stephens v. State,* 774 P.2d 60, 72 (Wyo. 1989) ("A proper foundation is essential, however, and the simple fact that the statement was made to a doctor or other medical personnel during treatment does not justify admission.") (overruled on other grounds by *Large v. State,* 2008 WY 22, 177 P.3d 807) (Wyo. 2008)). In *Stephens,* this Court explained "proper foundation" in relation to Rule 803 when it adopted the Eighth Circuit's two-part *Renville* test:

> * * * [F]irst, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment [or diagnosis]; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.

*Stephens*, 774 P.2d at 72 (quoting *United States v. Renville,* 779 F.2d 430, 436 (8th Cir. 1985)). "[W]hen a statement is made to a physician for the purpose of providing evidence for a court proceeding rather than for treatment purposes, courts have held that the declarant lacks a "treatment motive" and that therefore the statement is inadmissible." *R.S. v. Knighton*, 125 N.J. 79, 87 (1991), 592 A.2d 1157, 1161 (N.J. 1991); *see also State v. D.R.*, 214 N.J. Super. 278, 289, n.4 (1986), 518 A.2d 1122, 1127 (N.J. App. Div. 1986)*, rev'd on other grounds*, 109 N.J. 348 (1988), 537 A.2d 667 (N.J. 1988); *State in Interest of C.A.*, 201 N.J. Super. 28, 33-34 (1985), 492 A.2d 683, 686 (App. Div. 1985). Conversely, the medical diagnosis or treatment exception does not require an independent showing of the declarant's trustworthiness because the trustworthiness can be established by a showing that it was reasonably pertinent to diagnosis and was relied upon by the healthcare professional to arrive at an expert diagnosis. *King v. People,* 785 P.2d 596, 602 (Colo. 1990). Recently, even the United States Supreme Court weighed in on statements made for purposes of medical diagnosis or treatment and said that "by their nature," these statements are "made for a purpose other than use in a prosecution." *Michigan v. Bryant*, ___ U.S. ___, 131 S.Ct. 1143, 1157 n.9 (2011).

[¶12] In looking at whether the victim's statements, through the SANE nurse's testimony, are admissible in this case, decisions from other jurisdictions are instructive. New Mexico, in the *Mendez* case, *supra,* specifically, has pointed out the tenuous situation presented by SANE nurse testimony:

> We acknowledge the special challenges posed by determining the admissibility of statements made to SANE nurses under Rule 11-803(D), but we reject the notion that statements can be categorically excluded based on the professional status or affiliation of the individual to whom the statement is made. SANE nurses fill a void in our medical

system, providing critical treatment to patients at a time of great physical, emotional, and psychological vulnerability. As the State points out, SANE nurses may be better suited to provide this treatment due to their special training than non-SANE nurses and physicians. But they also have special expertise in gathering evidence for subsequent prosecution of the offender, which raises appropriate concerns about whether the statement was made for the purposes of seeking medical care or whether a medical provider could have reasonably relied upon the statement for diagnosis or treatment of the declarant.

Both Defendant and the State seem to agree that SANE nurses have a *dual* role: the provision of medical care and the collection and preservation of evidence. As the State's brief explains, SANE nurses "are overall more competent than emergency room[] doctors and non-SANE nurses at collecting and preserving evidence of value to the legal system." *See* Campbell, *supra* at 321 ("SANEs collect forensic evidence correctly and, in fact, do so better than physicians."). When compared with other medical providers, the goals of SANE nurses and SANE examinations can seem more closely aligned with law enforcement, which presents an acute risk that the SANE nurse's expert status can be abused to allow an end-run on the hearsay rule. Trial courts must be aware of the potential for such abuses, subjecting to close scrutiny the exchange between SANE nurse and patient to determine the statement's overall trustworthiness under Rule 11-803(D) in light of the two rationales highlighted above.

SANE nurses may be more adept at collecting and preserving evidence, but any medical provider who treats sexual abuse victims is engaged to some extent in the collection of evidence, and most understand that the evidence they collect--physical or otherwise--could be used in a subsequent prosecution. *See* Robert P. Mosteller, *Testing the Testimonial Concept and Exceptions to Confrontation: "A Little Child Shall Lead Them,"* 82 Ind. L. J. 917, 952 (Fall 2007) ("There is every reason to assume that the vast majority of doctors and nurses are aware both of reporting requirements and the admissibility of many statements made to them during the examination process. The medical

examination thus always has the potential to feed directly into the criminal process, and use of the statements at trial is an obvious possibility." (footnote omitted)).

*Mendez*, ¶¶ 41, 42, 43, 242 P.3d at 339-40. The *Mendez* court further reasoned that

> [a] trial court must therefore carefully parse each statement made to a SANE nurse to determine whether the statement is sufficiently trustworthy, focusing on the declarant's motivation to seek medical care and whether a medical provider could have reasonably relied on the statement for diagnosing or treating the declarant.

*Id.*, ¶ 43, 242 P.3d at 340.

[¶13] While it rejected a per se ban on statements made to a SANE nurse during an examination, the New Mexico Supreme Court held that the mere fact that the examination has both medical and forensic purposes does not render inadmissible all statements made during the course of the examination. *Mendez*, ¶ 38, 242 P.3d at 339. During an exam, a declarant may make a statement for medical diagnosis or treatment purposes, even if the primary purpose of the exam is forensic, and the question of admissibility should turn on whether the declarant's statements themselves are trustworthy, not simply whether the purpose of the exam was medical or forensic. *Id.*, ¶¶ 31-32, 242 P.3d at 337-38.

[¶14] The *Mendez* case also details the multitude of ways that courts approach these cases:

> While some jurisdictions retain a two-part test for determining admissibility, several others including New Mexico regard the "pertinence" rationale to be independently sufficient to establish trustworthiness and admissibility under Rule 11-803(D). *Compare* 4 Michael H. Graham, *Handbook of Federal Evidence* § 803:4, at 175-78 (6th ed. 2006) (citing jurisdictions that impose traditional two-part requirement), *with State v. Massengill*, 2003-NMCA-024, ¶ 25, 133 N.M. 263, 62 P.3d 354 ("'[U]nlike the common law rule, [Rule 11-803(D)] does not require inquiry into the patient's motive in making the statement,' so long as the statements were relied upon by the physician." (quoting *State v. Altgilbers*, 109 N.M. 453, 460, 786 P.2d 680, 687 (Ct. App. 1989))); *Esperanza M.*, 1998 NMCA 039, ¶ 14, 124 N.M. 735, 955 P.2d 204 ("[T]his Court and our Supreme Court have relied

on the foundation established by the party seeking to admit the hearsay testimony that testimony is admissible if it is 'reasonably pertinent' for medical diagnosis or treatment." (citing *State v. Woodward*, 121 N.M. 1, 8, 908 P.2d 231, 238 (1995), *abrogation recognized by State v. Granillo-Macias*, 2008-NMCA-021, 143 N.M. 455, 176 P.3d 1187)); *Altgilbers*, 109 N.M. at 459-60, 786 P.2d at 686-87; *and* Graham, *supra* § 803:4, at 178 ("A third group of jurisdictions does not require a specific showing of motive; rather, they inquire whether the subject-matter of the declarant's statement was reasonably pertinent to diagnosis or treatment.").

… while we agree with the conclusion in *Altgilbers* and other persuasive precedents that the "pertinence" rationale alone can provide a sufficient basis upon which to admit a statement under Rule 11-803(D), we would not go so far as to ignore the help-seeking motivation of the declarant altogether, whether in a child sexual abuse setting or any other case. The better approach, in our view, is for trial courts to take *both* rationales into consideration, depending on the circumstances of each case, focusing all the while on the trustworthiness of each statement. Trustworthiness can be established under either rationale alone, or some degree of both. In any event, trial courts are best suited to consider the relevant facts and circumstances of a given case in order to make the ultimate determination.

*Mendez*, ¶¶ 22, 23, 242 P.3d at 334-35.

[¶15] By and large, we agree with the New Mexico court, and agree that the most practical approach for this Court is to look at both rationales, in keeping with our adoption of the two-part test, while still focusing on the trustworthiness of the statements, which can be established by considering one rationale or some degree of both rationales. We also appreciate New Mexico's focus on the inevitability that during an exam, a declarant may make a statement for medical diagnosis or treatment purposes, even if the primary purpose of the exam is forensic. The bottom line is the question of admissibility and whether the declarant's statements themselves are trustworthy. *Mendez*, ¶ 31, n.4, 242 P.3d at 337. After all, "The extent to which a statement as to cause is pertinent to diagnosis or treatment rests within the discretion of the trial judge, who may consider the health care provider's testimony in making that determination." 13 Robert Lowell Miller, Jr., *Indiana Practice: Indiana Evidence* § 803.104 (3d ed. 2007) (citations omitted); *see also* Ind. Evidence Rule 104(a) ("Preliminary questions concerning . . . the admissibility

of evidence shall be determined by the Court[.]"); 21A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5053.3, p. 90 (2d ed. 2005) ("The judge determines the preliminary facts regarding the hearsay exceptions in Rule 803[.]").

[¶16]  That said, we turn to McLaury's argument that the State did not satisfy the first foundational requirement because it did not establish that the victim intended that her statements to the SANE nurse would be used for medical diagnosis or treatment. Rather, McLaury submits that the victim believed her statements were made for evidence collection purposes and that the exam would be used for prosecution purposes. McLaury argues that ***explicit*** testimony about the victim's motive to make the statements was required.  We conclude that the victim's statements were clearly admissible under the first prong.  The SANE nurse testified that the first thing she does during an examination is meet the patient and discuss what happened during the assault.  She explained that inquiring into the circumstances of the assault is an important part of the medical examination because "it helps guide me to areas where there could potentially be injury that I would have to treat.  It also guides me to areas where I might be able to collect possible biological evidence."  The SANE nurse later testified that "the patient stated to me that she had been sexually assaulted by the assailant placing his fingers into her vagina."  Also, the SANE nurse testified on cross-examination that the victim "stated to me that the assailant inserted his fingers into her vagina, but she did not state to me how many times it had occurred or how many fingers were used."  The SANE nurse further testified that the victim "reported some tenderness with the examination."

[¶17]  The trial court concluded that the victim's statements qualified as statements made for purposes of medical diagnosis or treatment without making any specific findings as to the victim's motive or the SANE nurse's reliance.  Nevertheless, the record supports that conclusion.  The nurse specifically testified that she relied on the medical history to guide her examination and asks what happened during an alleged assault "for the diagnosis and treatment of my patient," thereby satisfying the first prong of the reliability test.  She also testified that SANE nurses normally rely on similar histories to "guide me to areas where there could potentially be injury that I would have to treat."  McLaury's argument that the victim's statements to the SANE nurse were made specifically for use in McLaury's prosecution falls short.  The SANE nurse checked the victim for injuries and counseled her about preventative treatments for sexually transmitted infections.  While it is true that evidence collected was turned over to police, the exam was conducted at the hospital for medical purposes.  All of the above demonstrates the reasonableness of the SANE nurse's reliance on the victim's statements in satisfaction of the second prong of the reliability test.

[¶18]  As much as we look to the record for our conclusion, what is ***not*** in the record is also telling.  Nothing in this record indicates that the victim had an ulterior or underhanded motive when telling her story to the SANE nurse.  Moreover, there is nothing in the record that indicates that the victim was motivated by anything other than a

8

desire to receive appropriate medical care or that she did not understand the importance of telling the truth.

[¶19] McLaury's argument that the victim's statements to the SANE nurse were made specifically for use in McLaury's prosecution falls short. The SANE nurse checked the victim for injuries and counseled her about preventative treatments for sexually transmitted infections. The victim chose, when asked, to go to the hospital after reporting the incident.

[¶20] The trial court did not abuse its discretion in allowing the SANE nurse to testify as she did.

## CONCLUSION

[¶21] McLaury's conviction is affirmed, and we conclude that the district court did not abuse its discretion when it admitted the victim's statements made during her sexual assault examination under W.R.E. 803(4).

**BURKE, Justice,** specially concurring, with whom **VOIGT, Justice,** joins.

[¶22]  I concur in the result reached by the majority.  I write separately because I would take a different path to reach that result.  I would conclude that the State failed to demonstrate that the victim's hearsay statements to the SANE nurse were admissible. The State did not establish that the victim made those statements for the purpose of receiving medical treatment.  It was error to admit those statements into evidence. However, I would also conclude that the error was harmless and would affirm the conviction.

[¶23]  It is undisputed that the victim's statements to the SANE nurse were hearsay and inadmissible unless they fell within a specific exception to the hearsay rule.  At trial, the State sought admission of the statements under the medical treatment exception to the hearsay rule, W.R.E. 803(4).  In order for the statements to qualify for admission under this exception, a proper foundation must be provided.  *Stephens v. State*, 774 P.2d 60, 72 (Wyo. 1989) ("A proper foundation is essential, however, and the simple fact that the statement was made to a doctor or other medical personnel during treatment does not justify admission."), *overruled on other grounds by Large v. State*, 2008 WY 22, 177 P.3d 807 (Wyo. 2008).  The proponent of the statement must establish that: (1) the declarant's motive in making the statement is consistent with the purposes of promoting treatment or diagnosis; and (2) the content of the statement must be such as is reasonably relied upon by a medical provider in treatment or diagnosis.  *Stephens*, 774 P.2d at 72.  In this case, the State bore the burden of laying the proper foundation for admissibility of the statements.

[¶24]  The majority properly recognizes that the exchange between the SANE nurse and the victim must be closely scrutinized to determine the overall trustworthiness of the statements.  Such scrutiny involves an evaluation of the declarant's motivation in seeking medical care and the reasonableness of the medical provider's reliance on the statement for diagnosis or treatment.  *Mendez*, ¶ 43, 242 P.3d at 340.  The majority concludes that the State satisfied its foundational burden.  I disagree.

[¶25]  The majority concludes that "there is nothing in the record that indicates that the victim was motivated by anything other than a desire to receive appropriate medical care."  To the contrary, there is nothing in the record indicating that the victim went to the hospital for treatment.  The only evidence relevant to that issue establishes that the victim went to the hospital for a forensic exam, not treatment.

[¶26]  Prior to calling the SANE nurse as a witness, the State introduced testimony from three witnesses: Officer Micah Veniegas, the victim, and the victim's boyfriend.  Their testimony was consistent and undisputed.  According to that testimony, the victim went to the hospital at the request of law enforcement to have a "rape kit" administered.  The record reflects the following:

10

- Officer Veniegas testified: "Based on that, after I contacted the sergeant, [we] decided to have the victim . . . go down to the [hospital] and have a sexual assault kit conducted on her."

- The victim testified that she went to the hospital because: "After we had filled out the statement and everything like that, the officer had asked me if I would like to go to the hospital and do one of those, like, rape kits, sexual assault kits. And I told him yes."

- The boyfriend testified that they went to the hospital for "a rape kit."

- The victim did not immediately seek medical treatment upon arriving at the hospital. According to Officer Veniegas, after they arrived at the hospital, he learned that "they did not have a SANE nurse at the hospital at that time." He then "advised them that they needed to contact the SANE nurse and have her respond to the hospital." They waited for an hour and a half for the SANE nurse to arrive. There is no evidence that the victim received or sought any medical treatment in the interim.

All of this evidence is at odds with the majority's conclusion that the victim's motive for the visit with the SANE nurse was treatment. The majority's failure to address this evidence is contrary to its recognition that statements made to a SANE nurse must be subjected to "close scrutiny."

[¶27] Based on this evidence, I would conclude that the State failed to provide an adequate foundation for admissibility under the W.R.E. 803(4) exception. The district court erred in admitting the statements. The error, however, was harmless.

[¶28] We have previously recognized that an appellant who claims error must also establish that the error was prejudicial.

> If we conclude the trial court erred, we must then determine if the error was prejudicial. *Bromley v. State*, 2009 WY 133, ¶ 24, 219 P.3d 110, 116 (Wyo. 2009). An error is prejudicial if there is a reasonable possibility the verdict might have been more favorable to the appellant if the error had never occurred. *Callen v. State,* 2008 WY 107, ¶ 5, 192 P.3d 137, 141 (Wyo. 2008). The burden of proving prejudicial error

11

rests with the appellant. *Skinner v. State*, 2001 WY 102, ¶ 25, 33 P.3d 758, 767 (Wyo. 2001).

*Silva v. State*, 2012 WY 37, ¶ 14, 271 P.3d 443, 448 (Wyo. 2012), quoting *Bloomfield v. State*, 2010 WY 97, ¶ 17, 234 P.3d 366, 373 (Wyo. 2010). Appellant has failed to identify the specific statements he finds objectionable or explain how exclusion of those statements would have resulted in a different outcome at trial. The victim did not identify Appellant as the perpetrator in any of those statements. The statements were a miniscule part of the evidence presented during the course of a four day trial and were, for the most part, merely cumulative to other evidence presented during the trial.[1] The victim testified at trial about the assault, and her boyfriend also testified that he witnessed the assault. There is no reasonable possibility that the verdict would have been more favorable to Appellant if the statements had been excluded. Appellant has failed to establish that the error was prejudicial.

[¶29]  If statements made to a SANE nurse merit close scrutiny because of the close connection between the SANE nurse and law enforcement, then we should apply that standard in this case. The hearsay testimony is legally "trustworthy" and admissible only if it satisfies the requirements for admission as an exception to the hearsay rule under W.R.E. 803(4). The State, as the proponent of the evidence, had the burden of establishing that foundation. There is significant evidence in this record indicating that the victim went to the hospital solely for a forensic exam by the SANE nurse. That evidence has been ignored by the majority and, because of that, the conclusion it reached regarding admissibility is flawed.

---

[1] One of the statements to the SANE nurse, and the most potentially prejudicial, was admitted by the court because defense counsel had "opened the door" during cross examination of the SANE nurse. During cross examination, defense counsel inquired about the number of times penetration occurred. The SANE nurse testified that the victim did not tell her "how many times." On redirect, the State was allowed to address that issue. In response to a question from the prosecutor, the SANE nurse testified that the victim "said that she had asked the assailant to stop, but the assailant did not stop."