# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 100

### APRIL TERM, A.D. 2019

### October 3, 2019

JORGE F. GONZALEZ-CHAVARRIA,

Appellant
(Defendant),

v.                                                                              S-19-0054

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Russell Farr, Senior Assistant Attorney General. Argument by Mr. Farr.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY**, Justice.

[¶1]   On June 3, 2018, police officers were dispatched to a home in Sheridan, Wyoming, following a 911 call reporting domestic violence.  When they arrived, the officers found Jorge F. Gonzalez-Chavarria's wife badly beaten.  Mr. Gonzalez-Chavarria was charged and convicted on two counts—Count I, Strangulation of a Household Member; and Count II, Domestic Battery.  He appeals his conviction on Count I, claiming the district court erred in admitting the testimony of Ms. Gonzalez's treating physician, Dr. Mangus, for the truth of the matter asserted after ruling the testimony would be admitted only for impeachment.  Mr. Gonzalez-Chavarria also argues the evidence was insufficient to establish the elements of strangulation.  We affirm.

## *ISSUES*

[¶2]   We rephrase the issues:

1. Did the district court err when it did not give a limiting instruction if Dr. Mangus's testimony was admitted for impeachment purposes only or, in the alternative, did the district court err in admitting the testimony for substantive purposes?

2. Was the evidence sufficient to support the jury's finding that Mr. Gonzalez-Chavarria caused bodily injury by impeding Ms. Gonzalez's normal circulation of blood?

## *FACTS*

[¶3]   On June 2, 2018, Ms. Gonzalez and Mr. Gonzalez-Chavarria were at home drinking beer.  At some point that night, Ms. Gonzalez awoke to Mr. Gonzalez-Chavarria straddled on top of her, beating her with one hand while he read messages from her cell phone which he held in his other hand.  He then slammed the phone on the headboard and continued to beat her with both hands.  She feigned unconsciousness, and he got off the bed.  While Mr. Gonzalez-Chavarria went to look for the key to the gun safe, Ms. Gonzalez ran to her daughter's bedroom where her daughter called the police.

[¶4]   At 1:10 a.m., Officer Walker and Sergeant Gerleman arrived.  Ms. Gonzalez's son-in-law saw the officers approach and climbed out of the window to let them in.  An ambulance arrived shortly after the officers entered the home and transferred Ms. Gonzalez to the hospital.  After the officers arrested Mr. Gonzalez-Chavarria, he stated, "I found out my wife was cheating on me and I beat . . . her."

1

[¶5]    At trial, Dr. Lieb, the emergency room physician, testified he treated Ms. Gonzalez and transferred her to the intensive care unit.  Dr. Lieb stated that he asked Ms. Gonzalez what caused her injuries, and she replied her husband had beaten and choked her.  Ms. Gonzalez reported pain in her neck and pain when she moved her head.  Dr. Lieb observed swelling and bruising on her face.  Her eyes were swollen and when manually opened exhibited "subconjunctival hemorrhages"—bruising or broken blood vessels in the white part of the eyes.  He also noted "petechiae," or ruptured capillaries in the skin.  Dr. Lieb testified this condition commonly appears on a patient's cheeks when blood flow is impeded.  Both subconjunctival hemorrhages and petechiae can be caused by manual strangulation.  From his observations, Dr. Lieb concluded Ms. Gonzalez was the victim of assault by strangulation.

[¶6]    Dr. Mangus, the general surgeon and the director of the trauma program at the Sheridan hospital, testified he visited Ms. Gonzalez in the intensive care unit around 7:00 a.m. on June 3.  He reviewed her records and conducted his normal examination to ensure no injury was overlooked and her pain control was adequate.  During this examination, Ms. Gonzalez told Dr. Mangus she was beaten and choked by her husband.  Dr. Mangus visited Ms. Gonzalez around noon the same day and determined she was ready to be discharged.

[¶7]    Officer Hawkins of the Sheridan Police Department testified he conducted a follow-up interview.  When Officer Hawkins asked Ms. Gonzalez what happened, she said she woke up to find her husband hitting her and "[a]t one point he choked her."

[¶8]    Two days after her release from the hospital, Ms. Gonzalez returned to the emergency room complaining of "neck pain and difficulty swallowing."  Dr. Goddard, the emergency room physician who treated Ms. Gonzalez, testified he observed a significant amount of bruising around Ms. Gonzalez's neck and "fairly severe subconjunctival hemorrhages" in both eyes.  He stated the significant bruising indicated "there was a lot of force applied."  Dr. Goddard explained there are multiple indications of manual strangulation, the most obvious being trauma to the skin of the neck, difficulty swallowing, and sore throat.  He stated there may also be signs on the face, petechiae, that are caused by increased pressure in the venous system.  Although the petechiae usually appear almost immediately, bruising on the neck and swelling may not be apparent for "24 or 48, [or] 72 hours."

[¶9]    At trial, Ms. Gonzalez testified her husband beat her, but he definitely did not choke her.  She claimed he only grabbed her chin.  She did not remember speaking to anyone at the hospital except for one nurse and one doctor and did not remember discussing with them what had happened.  She did remember speaking with an officer the next day but does not remember if she told him she was choked.

[¶10] The jury found Mr. Gonzalez-Chavarria guilty of both Strangulation of a Household Member and Domestic Battery. The district court sentenced him to not less than two years and not more than three years on Count I, and on Count II, a six-month prison sentence to run concurrently with the sentence in Count I. Mr. Gonzalez-Chavarria timely appealed.

## DISCUSSION

I. ***Did the district court err when it did not give a limiting instruction if Dr. Mangus's testimony was admitted for impeachment purposes only or, in the alternative, did the district court err in admitting the testimony for substantive purposes?***

### A. Standard of Review

[¶11] Mr. Gonzalez-Chavarria argues the district court erred in allowing Dr. Mangus's testimony to be admitted for the truth of his assertions because the district court had already ruled the testimony would be allowed solely for the purposes of impeachment. "We review rulings on the admissibility of evidence for an abuse of discretion." *Bittleston v. State*, 2019 WY 64, ¶ 39, 442 P.3d 1287, 1297 (Wyo. 2019); *Farrow v. State*, 2019 WY 30, ¶ 52, 437 P.3d 809, 823 (Wyo. 2019). We defer to a trial court's determination and will not disturb the ruling if there is a legitimate basis for it. *Bittleston*, ¶ 39, 442 P.3d at 1297; *Farrow*, ¶ 52, 437 P.3d at 823. To determine whether there is an abuse of discretion, we consider "whether the court could reasonably conclude as it did, and whether it acted in an arbitrary and capricious manner." *Moser v. State*, 2018 WY 12, ¶ 40, 409 P.3d 1236, 1248 (Wyo. 2018) (quoting *Triplett v. State*, 2017 WY 148, ¶ 23, 406 P.3d 1257, 1262 (Wyo. 2017)).

### B. Procedural History

[¶12] Prior to trial, the State subpoenaed Ms. Gonzalez's treating physicians to testify at trial. While Ms. Gonzalez initially signed the hospital's release for her medical records, she later revoked it. This led to motions to quash the subpoenas. The district court held a hearing on the motions, reviewed the files in camera, and ruled the Hospital Records Act did not prevent disclosure. The parties believed that most or all of the records had been provided before Ms. Gonzalez revoked her release, except the State had not received the records regarding her follow-up treatment.

[¶13] On the second day of trial, outside the presence of the jury, defense counsel objected to allowing Dr. Mangus's testimony because no records or treatment narratives had been provided. The State also had not received any records authored by Dr. Mangus. The prosecutor had recently interviewed Dr. Mangus, and according to the prosecutor, it was clear that Dr. Mangus was discussing his personal recollection of his treatment and

3

that Ms. Gonzalez told him she had been choked. The prosecutor had asked Dr. Mangus to bring any personal notes with him to court that morning that might refresh his recollection.

[¶14] The district court then questioned Dr. Mangus regarding the records he had in his possession. Dr. Mangus stated he brought in two notes. One was his "history and physical" which included his initial examination, assessment, and plan for Ms. Gonzalez. The second was his progress notes made after he saw her later in the day. The notes were provided to defense counsel who verified that the hospital had not produced these records. The prosecutor advised the district court that he intended to question Dr. Mangus on the hospital examination, the symptoms he observed, whether these symptoms were likely the result of strangulation, and whether Ms. Gonzalez told Dr. Mangus her husband choked her. After defense counsel raised his objections, the district court stated:

> All right. I'm going to limit this witness's testimony solely to impeachment of Helen Gonzalez with respect to any statements she may have made that she was choked or strangled . . . . I'm not going to allow his expert testimony with respect to other medical issues and examination.
>
> I'll allow some foundation . . . that he's a doctor, here's the context in which he received that statement from Ms. Gonzalez, but that's the limiting amount that I'm going to allow the State to call this witness to testify.

[¶15] Counsel were then given time to look at the records before Dr. Mangus would testify. Prior to reconvening the jury, the parties again met with the district court to discuss Dr. Mangus's testimony. Defense counsel objected to Dr. Mangus's testimony on the basis it would not reflect his personal knowledge. The court stated it would not allow testimony unless it was based on personal knowledge, and the prosecutor must lay the foundation. Defense counsel asked, "And the context that the [c]ourt is allowing, based on my understanding, is that it's impeachment testimony for prior inconsistent statements?" The court responded, "Well, . . . it may or may not be both in impeachment testimony and substantive testimony. There may be a hearsay exception, but the basis is for impeachment at this point in time."

[¶16] Defense counsel renewed his objection to any substantive testimony from Dr. Mangus and requested, if the testimony was admitted for impeachment, the district court provide a limiting instruction. The prosecutor explained that he planned to lay the foundation for the medical diagnosis or treatment exception to the inadmissibility of hearsay evidence under W.R.E. Rule 803(4). The district court stated:

4

> I'm just going to have to wait and see what occurs. It may well be admitted for impeachment purposes and the truth of the matter asserted. With respect to that second component, if it fits hearsay exception. And I'll be listening carefully for that hearsay exception in the foundation. And if you don't think it's there, make whatever record or objection you want, [defense counsel], but you know what I'm going to be listening for.

The jury returned to the courtroom and Dr. Mangus testified. After eliciting Dr. Mangus's qualifications and the steps leading to his examination of Ms. Gonzalez, the prosecutor asked, "what did she tell you?" Defense counsel objected on hearsay grounds. The district court overruled the objection. Defense counsel did not renew his request for a limiting instruction.

## C.    Discussion

[¶17] Mr. Gonzalez-Chavarria argues, if we find the district court admitted Dr. Mangus's testimony for "multiple purposes," the district court erroneously contradicted its clear ruling that the testimony was allowed for impeachment purposes only. Mr. Gonzalez-Chavarria recognizes "that a district court judge [can] reconsider an evidentiary ruling," but contends the district court's original ruling became the "law of the case" which could not be changed absent a clear statement the ruling was altered, or upon a motion for reconsideration, and an opportunity to respond. He submits "defense counsel was under the understanding that the court was allowing the testimony solely for impeachment purposes." According to Mr. Gonzalez-Chavarria, the district court's failure to clarify its ruling denied him due process. We disagree.

[¶18] Generally, the law-of-the-case doctrine provides that a court's ruling applying the law should continue to govern the same issues throughout each stage of the case. *Bean v. State*, 2016 WY 48, ¶ 61, 373 P.3d 372, 391 (Wyo. 2016); *see also Brown v. State*, 953 P.2d 1170, 1174 (Wyo. 1998). "The doctrine expresses the practice of courts generally to refuse to reopen what has been decided, but it does not limit [courts'] power." *Bean*, ¶ 61, 373 P.3d at 391 (citation and quotation marks omitted). "The doctrine of the law of the case, therefore, does not foreclose a trial court from reconsidering issues in a case previously decided by the same court." *Brown*, 953 P.2d at 1175. The law-of-the-case doctrine is not applicable here.

[¶19] "[A] trial judge has broad discretion on evidentiary rulings because this type of decision turns upon the evidence as developed during the course of a trial." *Id.* In this case, Dr. Mangus's testimony was initially limited to impeachment in response to the failure to supply the medical records prior to trial. After hearing further argument immediately following this limitation, the district court informed defense counsel that this

5

testimony would be admitted substantively if the prosecutor established a hearsay exception. The court told defense counsel that, if he thought the foundation was inadequate, he should object. The court had not made a definitive ruling applying the law. The prosecutor established the foundation for Dr. Mangus's testimony under the W.R.E. Rule 803(4) exception to hearsay for statements made for purposes of medical diagnosis or treatment.[1] Defense counsel objected. The district court overruled the objection, thus admitting the testimony for the truth of the matter asserted. No limiting instruction was necessary.

[¶20] Assuming the district court's statement limiting Dr. Mangus's testimony was in fact a ruling, Mr. Gonzalez-Chavarria cannot establish the admission was prejudicial. "An error is deemed prejudicial when there is a reasonable probability that, in the absence of the improper evidence, the verdict would have been more favorable to the appellant." *Swett v. State*, 2018 WY 144, ¶ 12, 431 P.3d 1135, 1140 (Wyo. 2018) (citation omitted). Here, Dr. Mangus's testimony that Ms. Gonzalez told him that her husband choked her was but one of four instances where witnesses testified that she said the same thing. Dr. Lieb, Dr. Goddard, and Officer Hawkins all testified Ms. Gonzalez told them her husband had choked her. Dr. Mangus did not testify regarding his medical opinion on the injuries he observed or the cause of those injuries. There is no reasonable probability that, without Dr. Mangus's testimony, the verdict would have been more favorable to Mr. Gonzalez-Chavarria.

## II. Was the evidence sufficient to support the jury's finding that Mr. Gonzalez-Chavarria caused bodily injury by impeding Ms. Gonzalez's normal circulation of blood?

[¶21] Mr. Gonzalez-Chavarria concedes the evidence was sufficient to show bodily injury through blunt force trauma. He contends, however, the evidence was insufficient to prove beyond a reasonable doubt he caused bodily injury by impeding the normal blood circulation, an element of strangulation.

### A. Standard of Review

---

[1] We discussed W.R.E. 803(4) foundation in *Schmidt*:

> Foundation for a Rule 803(4) statement looks to: 1) the declarant's motive in making the statement, which must be consistent with the purposes of promoting treatment [or diagnosis]; and 2) the content of the statement, which must be such as is reasonably relied on by a physician in treatment or diagnosis.

*Schmidt v. State*, 2017 WY 101, ¶ 27, 401 P.3d 868, 878 (Wyo. 2017) (citations and quotation marks omitted).

[¶22] "[When] reviewing a sufficiency of the evidence claim, we decide whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented." *Bittleston*, ¶ 17, 442 P.3d at 1292 (citation and internal quotation marks omitted). "In doing so, we assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence." *Id.* (citation omitted).

## B.     Discussion

[¶23] The State charged Mr. Gonzalez-Chavarria with strangulation in violation of Wyo. Stat. Ann. § 6-2-509(a)(i):

> **§ 6-2-509.  Strangulation of a household member; penalty.**
>    (a) A person is guilty of strangulation of a household member if he intentionally and knowingly or recklessly causes or attempts to cause bodily injury to a household member by impeding the normal breathing or circulation of blood by:
>        (i) Applying pressure on the throat or neck of the household member[.]

Wyo. Stat. Ann. § 6-2-509(a)(i) (LexisNexis 2019).  Wyo. Stat. Ann. § 6-1-104 defines "[b]odily injury" as: "(A) A cut, abrasion, burn or temporary disfigurement; (B) Physical pain; or (C) Impairment of the function of a bodily member, organ or mental faculty." Wyo. Stat. Ann. § 6-1-104(a)(i)(A)–(C) (LexisNexis 2019).  Mr. Gonzalez-Chavarria maintains there was insufficient evidence to support the conclusion that pressure was applied to Ms. Gonzalez's throat or neck and the conclusion that any bodily injury was caused by impeding breathing or circulation.

[¶24] In *Davis v. State*, the defendant was convicted under Wyo. Stat. Ann. § 6-2-509(a)(i) and argued the evidence was insufficient to support the conclusion he had caused "bodily injury." *Davis v. State*, 2017 WY 147, ¶ 27, 406 P.3d 1233, 1239 (Wyo. 2017).  Like Mr. Gonzalez-Chavarria, Mr. Davis's "argument focuse[d] primarily on the trial testimony of [his wife]" wherein "she never testified at trial that Appellant impeded her breathing." *Id.* ¶ 28, 406 P.3d at 1240.  Mr. Davis also claimed there was insufficient evidence to establish any bodily injury stating, "The only bodily injury that the evidence suggested may have been caused by impeding the normal breathing or circulation of blood by applying pressure on the throat or neck was the petechiae, and that [p]etechiae do not appear to fit within the definition of bodily injury." *Id.* ¶ 29, 406 P.3d at 1240 (internal quotation marks omitted).  We disagreed.

7

[¶25] We noted that "[t]he statute does not specify particular gradations of physical pain, illness, or impairment." *Id.* ¶ 30, 406 P.3d at 1240 (quoting *Mascarenas v. State*, 2003 WY 124, ¶ 15, 76 P.3d 1258, 1265 (Wyo. 2003)). In *Davis*, the "Appellant fail[ed] to recognize . . . that the State introduced evidence of [his wife's] prior statements to medical personnel" and "physical evidence of symptoms consistent with strangulation, as well as professional medical opinions that [his wife] had been strangled." *Davis*, ¶ 28, 406 P.3d at 1240. We found this "evidence, viewed in the light most favorable to the State, is sufficient to prove that [his wife's] breathing was impaired from pressure applied to [her] neck." *Id.*

[¶26] In this case, the doctors testified Ms. Gonzalez had symptoms consistent with strangulation such as the petechiae and the severe subconjunctival hemorrhages in both eyes. While either of these symptoms alone may not be sufficient to establish strangulation, Dr. Lieb, Dr. Mangus, Dr. Goddard, and Officer Hawkins testified Ms. Gonzalez told them her husband had choked her. Most convincingly, Dr. Goddard testified she returned to the emergency room two days after the incident with severe bruising and pain in her neck, and the significant bruising indicated "there was a lot of force applied." As in *Davis*, we believe this evidence is sufficient to establish that Ms. Gonzalez experienced an impediment to the normal circulation of her blood causing bodily injury.

## CONCLUSION

[¶27] The district court's evidentiary ruling admitting Dr. Mangus's testimony for the truth of the matter asserted was not an abuse of discretion. The evidence was more than sufficient for the jury to reasonably find Mr. Gonzalez-Chavarria guilty beyond a reasonable doubt of each element of his crimes. Affirmed.