# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 85

APRIL TERM, A.D. 2020

June 24, 2020

MARIO ALBERTO MORONES,

Appellant
(Defendant),

v.

S-19-0278

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellant:*

> Office of the Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*

> Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   A jury convicted Mario Morones of strangulation of a household member and driving while under the influence.  Mr. Morones appeals his strangulation conviction, arguing that the district court erred in admitting a nurse's testimony under the hearsay exception for medical diagnosis and treatment, and that there was insufficient evidence to support his conviction.  We affirm.

## ISSUES

[¶2]   Mr. Morones presents two issues for review:

> 1.      Did the district court commit prejudicial error by admitting the nurse's testimony under Wyoming Rule of Evidence 803(4)?
>
> 2.      Was the evidence sufficient to convict Mr. Morones of strangulation of a household member?

## FACTS

[¶3]   On the night of the incident, Mr. Morones, the victim, and a couple of friends went to Laramie Lanes to drink and play pool.  The group consumed alcohol throughout the night.  At around one o'clock in the morning, the victim and Mr. Morones argued outside the bowling alley.  The argument became physical, the victim tried to leave, and Mr. Morones tried to restrain her.  Eventually, the victim broke free and left on foot towards the Snowy Range Bridge.  Mr. Morones retrieved his truck and set off to find the victim.  He encountered her on the bridge, parked his truck, and confronted her.  Once again, the encounter became physical.  The victim tried to push Mr. Morones away from her and he tried to hold her in place.  The struggle caused the victim to fall backwards over the railing separating the sidewalk from the road, hit the ground head-first, and lose consciousness.  She awoke to Mr. Morones standing over her with his hands around her neck.  At that moment, a truck drove over the bridge, Mr. Morones released the victim, and she got up and ran in front of the truck.  The truck driver stopped to help the victim, and Mr. Morones left on foot to retrieve his vehicle.

[¶4]   The victim was bleeding from a gash on her head and the driver of the truck took her to the emergency room.  After waffling outside, the victim decided not to seek treatment because she feared getting in trouble for underage drinking.  The driver took her back to the bridge to help her find her purse and phone, which had been thrown by Mr. Morones during the struggle.  A police officer stopped when he noticed the truck and the two looking for the phone and purse.  The victim reported the incident to the police

1

officer. An ambulance took her to the hospital and a Sexual Assault Nurse Examiner (SANE nurse) evaluated her in the emergency room.

[¶5] Meanwhile, an Albany County sheriff's deputy stopped Mr. Morones on suspicion of driving while under the influence. Mr. Morones failed the field sobriety test and the deputy detained him. A Laramie police officer assisting on the victim's investigation left to question Mr. Morones about the incident.

[¶6] The State charged Mr. Morones with two counts of strangulation of a household member and one count of driving while under the influence. During opening statements, the State distinguished between the two strangulation charges chronologically stating, "[t]he evidence and testimony that will be presented . . . will corroborate [the victim]'s account of the events and how . . . [Mr.] Morones, put his hands on [the victim]'s neck on two separate occasions, once before she reached the Snowy Range Bridge and once while she was on the Snowy Range Bridge." The defense likewise described the incidents chronologically in opening statements, the first outside the bowling alley and the second on the bridge. Throughout the trial, both parties continued to refer to the incidents in a chronological fashion referring to the incident outside the bowling alley as first, and the incident on the bridge as second. The jury instructions and verdict form, however, contained identical language for each of the two strangulation charges. The jury found Mr. Morones not guilty on the first count of strangulation of a household member, guilty on the second count of strangulation of a household member, and guilty of driving while under the influence. Mr. Morones appealed the strangulation conviction.

### *STANDARD OF REVIEW*

[¶7] We review Mr. Morones' challenge to the district court's admission of the SANE nurse's testimony for an abuse of discretion. *Schmidt v. State*, 2017 WY 101, ¶ 22, 401 P.3d 868, 878 (Wyo. 2017). "A trial court abuses its discretion when it could not have reasonably concluded as it did. In this context, 'reasonably' means sound judgment exercised with regard to what is right under the circumstances and without being arbitrary or capricious." *Id.* (quoting *Toth v. State*, 2015 WY 86A, ¶ 29, 353 P.3d 696, 705 (Wyo. 2015)).

[¶8] We review a claim of sufficiency of the evidence by determining "whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented." *Gonzalez-Chavarria v. State*, 2019 WY 100, ¶ 22, 449 P.3d 1094, 1099 (Wyo. 2019) (citation omitted). "In doing so, we assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence." *Id.* (citation omitted).

2

## DISCUSSION

### I.     The district court did not err in admitting the SANE nurse's testimony under *Wyoming Rule of Evidence 803(4)*

[¶9]    Mr. Morones argues that the district court erred in admitting the SANE nurse's testimony under Wyoming Rule of Evidence 803(4), which provides an exception to the general prohibition against hearsay for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."  W.R.E. 803(4).  Here, the SANE nurse testified about the strangulation assessment she completed that contained the victim's description of events:

> [The victim] reported strangulation this evening by her boyfriend.  That there were two episodes of strangulation with both hands.  After the first episode she was able to run away.  During the second episode she reported that ["]he was squeezing, pushing, choking me and threw me on the ground.["]  Reported that she blacked out.  When she woke up she was on the ground and ["]he was standing over me, choking with[] both hands.  I felt like I couldn't breathe.["]

Mr. Morones asserts that the victim's statements to the SANE nurse do not fall under the hearsay exception because they were not made for medical diagnosis or treatment.  He relies on the fact that the victim originally declined medical treatment and only made her statement to the SANE nurse after law enforcement became involved.  The State argues that the victim made the statement for the purpose of medical treatment and that the timing of her examination is immaterial.

[¶10]  Rule 803(4)'s hearsay exception is grounded in "the likelihood that the declarant was motivated to tell the truth by the belief that the effectiveness of the treatment depended upon the accuracy of the information relayed."  *McLaury v. State*, 2013 WY 89, ¶ 10, 305 P.3d 1144, 1146 (Wyo. 2013) (citation omitted).  We recognize that SANE nurses serve the dual roles of providing medical care and collecting and preserving evidence for criminal prosecutions.  *E.g.*, *Id*. at ¶ 15, 305 P.3d at 1149; *Griggs v. State*, 2016 WY 16, ¶ 116, 367 P.3d 1108, 1140 (Wyo. 2016).  The proponent of the evidence must provide a foundation for the statement which "looks to: 1) the declarant's motive in making the statement, which 'must be consistent with the purposes of promoting treatment [or diagnosis]'; and 2) the content of the statement, which 'must be such as is reasonably relied on by a physician in treatment or diagnosis.'"  *Schmidt*, 2017 WY 101, ¶¶ 26-27, 401 P.3d at 878 (quoting *Griggs*, 2016 WY 16, ¶ 115, 367 P.3d at 1140).  In

*McLaury*, we emphasized that "even if the primary purpose of the exam is forensic," the question of admissibility turns on whether the declarant's statement is trustworthy. 2013 WY 89, ¶ 13, 305 P.3d at 1148.

[¶11] The record reveals that the victim's initial reluctance to seek treatment stemmed from a fear of getting in trouble for underage drinking. Viewed in context, the victim's initial decision to decline treatment does not make her later decision to seek help unreliable. When the victim decided to make a statement, she did so at the hospital to a nurse, and she did receive treatment. Here, the victim's motive for making her statement to the SANE nurse is consistent with seeking treatment and diagnosis.

[¶12] Under the second prong of the test, Mr. Morones argues that the victim's statement was not of the type reasonably relied upon for medical diagnosis and treatment because it went beyond symptoms and the "mechanical nature" of how the events occurred. He argues the statement is improper because it directly identifies the crime charged and Mr. Morones as the perpetrator. Mr. Morones relies on *Oldman v. State*, for the proposition that statements "attributing fault or causation generally are not admissible in evidence under W.R.E. 803(4) because they are not relevant to diagnosis or treatment." 998 P.2d 957, 961 (Wyo. 2000). His reliance on this statement ignores *Oldman's* holding. In *Oldman*, we held that the physician's statement identifying the victim's domestic partner as her attacker was admissible under W.R.E. 803(4) because the identity of her attacker could have relevance to her treatment. *Id.* at 962; *see also Goldade v. State*, 674 P.2d 721, 726 (Wyo. 1983) ("Even in the case of a statement made for treatment the test is not only whether the declarant thought it relevant (thereby establishing reliability), *but also whether a doctor would have reasonably relied upon such a statement in deciding upon a course of treatment. . . .* It is apparent from the testimony of the physician quoted above that he was involved in attempting to diagnose and, if diagnosed, to then treat child abuse, not simply bruises on the little girl's face. The identity of the person causing those injuries is a pertinent fact in these circumstances.") (emphasis in original).

[¶13] Mr. Morones' argument that the statement was improper because the SANE nurse identified the charged crime also fails. The term "strangulation" in her report refers to the common understanding of the event described by the victim, not the specifics of Wyo. Stat. Ann. § 6-2-509(a)(i). *See Griggs*, 2016 WY 16, ¶¶ 117-19, 367 P.3d at 1140-41 (finding nurse practitioner's statement, including her conclusion that history was positive for child sexual abuse, admissible under Rule 803(4)).

[¶14] Further, we find that the victim's statement was of the type "reasonably relied on by a physician in treatment or diagnosis." *Schmidt*, 2017 WY 101, ¶ 27, 401 P.3d at 878 (quoting *Griggs*, 2016 WY 16, ¶ 115, 367 P.3d at 1140). At trial, the SANE nurse explained the domestic violence forensic exam process:

[W]e collect the medical history and then we write down the patient's narrative of what brought them in that night. The narrative helps guide our assessment, what we do, where we look for injuries, if we see injuries we care for those injuries, we can take photographs that can be used as forensic evidence and in criminal investigations with the patient's consent.

The victim in this case gave her narrative of what occurred and, based on that description, the SANE nurse focused her assessment on the victim's head, neck, and back. That exam identified physical injuries sufficient for the treating physician to reach his diagnosis—strangulation. Further, based on the victim's statement, she underwent a diagnostic CT scan to ensure there was no internal damage to the structures in her neck and throat. The victim's statement plainly meets the second prong of the test because the treating physician in this case relied on it for diagnosis and treatment. The district court did not abuse its discretion in admitting the SANE nurse's statement under W.R.E. 803(4).

## II. The evidence was sufficient to support the jury's guilty verdict for strangulation of a household member

[¶15] Mr. Morones next asserts the evidence is insufficient to support his conviction on one of the two counts of strangulation of a household member. The State points out that the information and jury instructions are identical for counts I and II. Though Mr. Morones did not raise this issue, we must address it because we cannot analyze the sufficiency of the evidence until we have determined which of the two charges is at issue.

[¶16] The felony information did not distinguish between Count I strangulation of a household member and Count II strangulation of a household member. The jury instructions were identical and each simply listed the elements of the crime without referring to the specific conduct allegedly committed under each count. The verdict form likewise made no distinction between the two counts. In *Triplett v. State*, 2017 WY 148, ¶¶ 12-21, 406 P.3d 1257, 1260-62 (Wyo. 2017), we emphasized the importance of specificity to ensure a constitutionally-guaranteed unanimous verdict. There, the defendant was charged with a crime occurring over a twenty-eight-month period without specifying which acts constituted the charged offense. This Court emphasized that the practice "'present[s] a danger that the jury may convict a defendant although not reaching a unanimous agreement on precisely which charge is the basis for the conviction' in violation of '[t]he Sixth Amendment guarantee . . . to a unanimous jury verdict.'" *Id.* at ¶ 13, 406 P.3d at 1260 (alterations in original) (quoting *United States v. Washington*, 653 F.3d 1251, 1262 (10th Cir. 2011)). *See also Tanner v. State*, 2002 WY 170, 57 P.3d 1242 (Wyo. 2002) (reversing burglary conviction because of the risk of a non-unanimous

verdict where the charging document and jury instructions failed to specify which alternate element the State alleged occurred and the general verdict failed to identify which element the jury found the defendant committed); *Bush v. State*, 908 P.2d 963 (Wyo. 1995). The jury acquitted Mr. Morones of one count and convicted him of the other. Because the jury instructions and verdict form were identical, some jurors may have convicted based on the bowling alley incident, while others may have convicted based on the bridge incident.

[¶17] In *Heywood v. State*, the defendant was charged with three counts of second-degree sexual assault. 2007 WY 149, ¶ 5, 170 P.3d 1227, 1229 (Wyo. 2007), *abrogated on other grounds by Granzer v. State*, 2008 WY 118, 193 P.3d 266 (Wyo. 2008). The information, jury instructions, and verdict form used identical language for each of the three counts. *Heywood*, 2007 WY 149, ¶¶ 21, 24, 170 P.3d at 1232-34. The Court observed that the failure to differentiate between counts could raise issues of providing the defendant with sufficient notice to defend himself, of whether there was sufficient specificity to protect the defendant from double jeopardy, or whether the judge had enough factual specificity to "sentence 'according to the right of the case.'" However, as none of those issues had been raised, they were waived. *Id.* at ¶ 22, 170 P.3d at 1233. Nonetheless, we reversed because the trial court had not answered the jury question seeking instruction as to which factual basis matched each of the three counts.[1] The Court held:

> The foregoing principles of law can be summarized for present purposes as follows: (1) instructions that leave doubt as to the circumstances under which the crime was committed are insufficient; (2) instructions that confuse or mislead the jury are insufficient; (3) jury questions revealing confusion or a lack of understanding should be answered.

*Id.* at ¶ 29, 170 P.3d at 1235.

[¶18] The same principles continue to apply. However, Mr. Morones waived the issue by not raising it either below or on appeal. Unlike in *Heywood*, there was no unanswered jury question, and it does not appear the jury was confused. The parties consistently described the events in a sequential fashion describing the incident outside the bowling alley as first, and the incident on the bridge as second.[2] We will not address the issue

---

[1] In *Granzer*, we abrogated *Heywood* to the extent that it held the failure to properly instruct was structural error or "error per se." Instead, such errors are subject to the plain error standard. *Granzer*, 2008 WY 118, ¶ 19, 193 P.3d at 272.

[2] The clarity of counsel's statements alone is likely insufficient to compensate for inadequate jury instructions. *See Flores*, 2017 WY 120, ¶ 11 n.3, 403 P.3d at 995 n.3.

further. *See Flores v. State*, 2017 WY 120, ¶ 11, 403 P.3d 993, 995-96 (Wyo. 2017) (affirming lower court after Mr. Flores raised a sufficiency of the evidence claim on appeal and declining to analyze an alternative element instruction error because it was not raised); *Triplett*, 2017 WY 148, ¶ 16, 406 P.3d at 1261 (finding that the failure to raise the issue below waived it on appeal). Even so, we caution the State and district courts to be mindful of the need for specificity in cases involving multiple counts of the same crime.[3]

---

[3] Effective July 1, 2020, Wyoming Rule of Criminal Procedure 3 is amended to provide:

**Rule 3. Indictment, information or citation.**

*\*\*\*\*\**

(b) *Nature and contents.*

(1) Indictment. Prosecution by indictment shall be carried on in the name and by the authority of the State of Wyoming, and shall conclude "against the peace and dignity of the State of Wyoming". It shall be signed by the attorney for the state. The indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. When multiple counts are involved, the facts must be stated with sufficient particularity so as to allow the defendant and court to distinguish between the various counts. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown, or that the defendant committed it by one or more specified means. The indictment shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated.

(2) Information. The information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. When multiple counts are involved, the facts must be stated with sufficient particularity so as to allow the defendant and court to distinguish between the various counts. It shall be signed by the attorney for the state. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. The information shall state: \*\*\*\*

Order Amending Rules 3, 4, 32, 46.4, and 48 of the Wyoming Rules of Criminal Procedure, https://www.courts.state.wy.us/wp-content/uploads/2020/03/Order-WRCrP-amd-March-2020.pdf

[¶19] Mr. Morones' sufficiency claim focuses exclusively on the bridge incident. He argues the only evidence of strangulation is the victim's "inconsistent out-of-court statements." Even if we ignore the victim's statements and testimony, there is sufficient evidence to support the jury's guilty verdict. In addition to the nurse's testimony, the emergency room physician who saw the victim after the incident testified as an expert about strangulation. He explained that when pressure in the vascular system increases, capillaries in areas of the body with less structure rupture and cause petechiae. He stated that medical professionals look for petechiae in strangulation cases. The doctor testified that in general, the presence of petechiae confirms a victim's report of strangulation. He went through the photographs admitted as evidence and circled the petechiae present in the victim's eyes and on her palate. Further, the doctor testified that based on his education and training, his "opinion . . . was that [the victim] was strangulated." In addition to the doctor's testimony, the State introduced dozens of photos documenting the victim's injuries. The photos included red marks around the victim's neck and documented petechiae in the victim's eyes and on her palate, and a subconjunctival hemorrhage. Mr. Morones did not object to these photos.[4]

[¶20] Assuming the State's evidence is true, disregarding evidence favoring Mr. Morones, and giving the State every favorable inference that may be drawn from the evidence, there is sufficient evidence to support the jury's guilty verdict on Count II, strangulation of a household member.

[¶21] We affirm.

---

[4] The district court admitted and granted permission to publish State's Exhibit 34. State's Exhibit 34 is a phone call made by Mr. Morones while incarcerated at the Albany County Detention Center. In that call he states, "[T]hen threw her to the ground and when she went to get up again, I strangled her again." Unfortunately, the transcript does not indicate that Exhibit 34 was ever published to the jury. We therefore do not consider it in determining whether there is sufficient evidence to support Mr. Morones' conviction.